**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SAMMIE L. MACON, )<br>)<br>Plaintiff, )<br>) **Civil Action No.**<br>v. ) **10-10587-FDS**<br>)<br>MICHAEL J. ASTRUE, Commissioner, )<br>Social Security Administration, )<br>)<br>Defendant. )<br>) | |

**MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTION TO REVERSE AND DEFENDANT'S
MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER**

**SAYLOR, J.**

This is an appeal of the final decision of the Commissioner of the Social Security Administration denying an application for social security disability insurance ("SSDI") and supplemental security income ("SSI") benefits. Plaintiff contends that the administrative law judge ("ALJ") erred (1) in not finding his asthma, sickle cell trait, poor vision, frequent headaches, dizziness, and depression to be severe impairments; (2) in failing to account for these impairments when calculating his residual functional capacity ("RFC"); and (3) failing to find him credible.

Pending before the Court is plaintiff's motion to reverse and the Commissioner's motion to affirm. For the reasons stated below, the motion to affirm will be granted and the motion to reverse will be denied.

**I.     Background**

Sammie Macon is a 47-year-old high-school graduate. (Administrative Record at 10). He has previously worked as a caregiver, cook, demolition laborer, warehouse worker, grain unloader, mover/driver, stocker, and electrician's helper. (*Id.* at 65). On July 2, 2007, he received an electrical shock while working and fell from a 10-foot ladder. (*Id.* at 21, 23-24). He has not worked since that date, allegedly as a result of injuries sustained from that accident. (*Id.* at 21-22).

A.   **Medical History**

On July 11, 2007, Macon went to The Regional Medical Center in Orangeburg, South Carolina, complaining of aching and numbness in his left side and difficulty hearing out of his left ear, which he attributed to the electrical shock. (*Id.* at 195). Dr. Schulze found some mild upper-left extremity soreness, but no sign of serious trauma. He instructed Macon to take Tylenol for the pain. (*Id.* at 196-98). Dr. Schulze suspected the hearing problems were caused by cerumen impaction and prescribed ear drops. (*Id.*).

On December 12, 2007, Macon went to Boston Medical Center complaining of severe headaches, as well as coughing and chest pain. (*Id.* at 206-10). A brain CT scan revealed no acute abnormalities. (*Id.* at 276). A physical examination revealed no problems. (*Id.* at 207-09). His physician instructed him to take ibuprofen and discharged him. (*Id.* at 207).

On January 22, 2008, Macon was examined by Dr. Bird, his primary care physician. Macon reported some occasional tingling in his extremities, but denied suffering from chest pain, headaches, or weakness in his extremities. (*Id.* at 236). Macon reported that he had re-aggravated a lower back problem that had been a significant problem in the past. Dr. Bird suggested a trial routine for his back, including hot showers, stretching, and walking. (*Id.*).

On February 21, 2008, Macon had a follow-up appointment with Dr. Bird. (*Id.* at 239). He reported that he continued to suffer back pain, but that the pain had improved somewhat with the back care routine. (*Id.*). Dr. Bird prescribed oxycodone for pain. (*Id.*). Dr. Bird also prescribed desipramine to help with headaches. (*Id.*).

At another follow-up on April 3, 2008, Macon again reported headaches, though he also reported that he had improved on desipramine. (*Id.* at 241). He stopped taking ibuprofen due to dyspepsia, which resulted in non-radiating back pain. (*Id.*). He also reported suffering some neck pain that would occasionally radiate to the left elbow. (*Id.*). Dr. Bird prescribed Celexa as a trial for treatment of depression, though Macon deferred counseling. (*Id.*). Dr. Bird confirmed sickle cell trait and noted that it might explain some pain tendency. (*Id.*).

On April 22, 2008, Dr. Gopal, a Social Security Administration Disability Determination Services medical consultant, reviewed Macon's medical records to conduct a residual functional capacity assessment. (*Id.* at 282-89). Dr. Gopal concluded that he could occasionally lift 20 pounds, lift 10 pounds frequently, and sit, stand, or walk for six hours in an eight-hour workday. (*Id.*). Dr. Gopal concluded that he would be capable of doing light work. (*Id.*). He could stoop or crouch only occasionally and should avoid concentrated exposure to extreme cold, humidity, fumes and odors, and hazards. (*Id.*).

On April 30, 2008, Macon saw Dr. Bird again. He reported suffering from continuing, but improving, low back and paracervical pain. (*Id.* at 244). Dr. Bird increased the prescriptions for Celexa and oxycodone. (*Id.*).

At a further appointment on May 23, 2008, Dr. Bird noted that Macon continued to have ongoing low-back pain that radiated to the thighs and occasional foot tingling, but the back-care

routine had improved his condition, he did not have problems with weakness, and his posture and mood had improved. (*Id.* at 246).

In July 2008, Macon visited an optometrist who diagnosed him as a potential suspect for glaucoma, but gave him a good prognosis and found that he had good visual acuity. (*Id.* at 290).

On December 6, 2008, Macon underwent an MRI of his back. The MRI showed mild degenerative changes of the lower lumbar spine, but no areas of significant canal narrowing or foraminal compromise. (*Id.* at 294-95).

Despite Macon's complaints of significant back pain, diagnostic testing (including CAT scans, MRIs and x-rays) has yet to reveal any mechanical problems. (*Id.* at 27, 39). He is also on medication for high blood pressure and cholesterol. (*Id.* at 30, 246). He has a history of asthma, sarcoidosis, and kidney stones. (*Id.* at 195, 208).

B.     **Daily Activities**

At the hearing, Macon stated that his daily routine included sitting around, taking walks, and going to the doctor's office. (*Id.* at 35). In his 2008 Function Report filed with his Social Security disability claim, Macon reported that he went grocery shopping and cooked meals, and he attempted to help with household chores, but that caused him pain. (*Id.* at 166). He also reported engaging in recreational activities such as reading and playing cards, but he had to stop and stretch periodically and was unable to sit for long periods. (*Id.* at 168). He testified that he experienced severe pain on a scale of 10 out of 10 most of the time, and no lower than 8, even on medication. (*Id.* at 28-29).

C.     **Procedural Background**

On January 25, 2008, Macon applied for DIB and SSI benefits, contending that he had

been disabled since July 2, 2007. (*Id.* at 59, 119). The application was denied initially and again upon request for reconsideration. (*Id.* at 68-73, 76-81). He requested an administrative hearing, which was held on September 3, 2009. Both Macon, who declined to have counsel present, and a vocational expert testified. (*Id.* at 4-51).

The ALJ issued his decision on October 30, 2009. He found that Macon was not disabled because he retained residual functional capacity to perform a range of light work. (*Id.* at 56-67). The Decision Review Board affirmed the ALJ's decision on February 1, 2010, after finding no reason to disturb the ALJ's decision. (*Id.* at 1-2). Having exhausted his administrative remedies, Macon filed this complaint on April 5, 2010. *See* 20 C.F.R. § 405.420(b)(2) (2010).

## III. Analysis

### A. Standard of Review

Under the Social Security Act, this Court may affirm, modify, or reverse the final decision of the Commissioner, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g). The Commissioner's factual findings, "if supported by substantial evidence, shall be conclusive," 42 U.S.C. § 405(g), because "the responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ. It does not fall on the reviewing court." *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001) (citation omitted); *Rodriguez Pagan v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (noting that the court "must affirm the Secretary's resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence"). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Questions

of law, to the extent that they are at issue in the appeal, are reviewed *de novo*. *Seavey*, 276 F.3d at 9.

**B.** **Standard for Entitlement to SSDI and SSI Benefits**

An individual is not entitled to SSDI or SSI benefits unless he or she is "disabled" within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423(a)(1), (d) (setting forth the definition of disabled in the context of SSDI); *id.* §§ 1382(a)(1), 1382c(a)(3) (same in the context of SSI). "Disability" is defined, in relevant part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment must be severe enough to prevent the plaintiff from performing not only past work, but any substantial gainful work existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1).

The Commissioner uses a sequential five-step process analysis to evaluate whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The steps are:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had . . . a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the 'listed impairments' in the Social Security regulations, then the application is granted; 4) if the applicant's 'residual functional capacity' is such that he . . . can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

*Seavey*, 276 F.3d at 5; *see* 20 C.F.R. § 404.1520(a)(4).[1] "The applicant has the burden of

---

[1] "All five steps are not applied to every applicant, as the determination may be concluded at any step along the process." *Seavey*, 276 F.3d at 5.

production and proof at the first four steps of the process," and the burden shifts to the Commissioner at step five to "com[e] forward with evidence of specific jobs in the national economy that the applicant can still perform." *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001). At that juncture, the ALJ assesses the claimant's RFC in combination with the "vocational factors of [the claimant's] age, education, and work experience," 20 C.F.R. § 404.1560(c)(1), to determine whether he or she can "engage in any . . . kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

### C. The Administrative Law Judge's Findings

In evaluating the evidence, the ALJ followed the five-step procedure set forth in 20 C.F.R. § 404.1520(a)(4).

At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 2, 2007, the alleged onset date of his disability. (AR at 61).

At the second step, the ALJ found plaintiff's low-back pain, secondary to lumbar myofascial inflammation and disc herniation at C6-7, to be a severe impairment based on objective medical evidence. (*Id.*). The ALJ did not find plaintiff's alleged pulmonary sarcoidosis, suspicion of glaucoma, hypertension, hypercholesteremia, asthma, depression, and history of substance abuse to be severe medically determinable impairments. (*Id.* at 62).

At the third step, the ALJ determined that the plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, while giving particular attention to listing 1.04, which covers disorders of the spine. (*Id.* at 63).

At the fourth step, the ALJ found that plaintiff's RFC allowed him to perform light work, with the restrictions that he could occasionally stoop and crouch, and should avoid concentrated

7

exposure to extreme cold, humidity, and hazards. (*Id.* at 63). Given this RFC, the ALJ found plaintiff incapable of performing his past relevant work as he performed it and as it is generally performed nationally. (*Id.* at 65).

At the fifth step, the ALJ found that given plaintiff's RFC, age, education, and work experience, there were jobs that exist in significant numbers in the national economy that he could perform. (*Id.*). The ALJ consequently made a finding that plaintiff was not disabled. (*Id.* at 66).

Plaintiff contends that the ALJ erred (1) in not finding his asthma, sickle cell trait, poor vision, frequent headaches, dizziness, and depression to be severe impairments; (2) in failing to account for these impairments when calculating his RFC; and (3) failing to find him credible.

**D.** **Severity of Plaintiff's Other Impairments**

Plaintiff first contends that the ALJ erred in not finding his asthma, sickle cell trait, poor vision, frequent headaches, dizziness, and depression to be severe impairments.

Step two of the sequential-evaluation process requires the Commissioner to determine whether a claimant possesses a "severe" impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment of combination of impairments is "severe" if it significantly limits an individual's ability to perform basic work activities and is expected to last twelve months or longer or result in death. *Id.* As the Commissioner correctly notes, "statements [by a claimant] about . . . pain or other symptoms will not alone establish that [she] are disabled; there must be medical signs and laboratory findings which show that [a claimant] ha[s] a medical impairment(s)." 20 C.F.R. §§ 404.1529(a), 416.929(a).

With respect to the asthma, the ALJ noted that in January 2008, plaintiff had denied suffering any respiratory symptoms over the past ten years and had not been prescribed any

8

medication. (AR at 62). Radiographs taken in April 2008 revealed no issues and plaintiff's lungs appeared clear. (*Id.*). There is thus substantial evidence supporting the ALJ's conclusion.

The ALJ also determined that plaintiff's poor vision was not a severe impairment. The ALJ's decision stated that although there was a suspicion of glaucoma, plaintiff retained 20/20 corrected vision. (*Id.*). Again, there is substantial evidence supporting the conclusion that poor vision did not impose a severe limitation. (*Id.*).

The ALJ also did not find any disability based on plaintiff's sickle cell trait. An issue that has not been raised before in Social Security Administration administrative proceedings is not generally reviewable by the District Court. *See Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986). A plaintiff bears the burden of providing evidence to demonstrate the severity of the claimed condition. *See McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1122 (1st Cir. 1986). Plaintiff did not raise sickle cell trait as an issue at the hearing with the ALJ, nor in any previous administrative proceeding. Furthermore, he has not explained how it prevents him from working. Under the circumstances, the fact that the ALJ did not find plaintiff's sickle cell trait to be an impairment is not erroneous.

There is some evidence of headaches and dizziness in plaintiff's medical record. (AR at 207, 239, 241). However, plaintiff himself failed to raise the issue of headaches or dizziness at the hearing when asked what medical conditions prevent him from working, which impliedly suggests that those symptoms were not disabling. *See Wheeler*, 784 F.2d at 1076. The medical evidence is insufficient to support an objective finding of disability based on headaches. Therefore, the ALJ did not err in finding plaintiff's headaches and dizziness were not disabling.

Finally, as to the issue of depression, the ALJ noted that plaintiff had been prescribed

9

Celexa, but had refused counseling and had received no psychological treatment. (AR at 62).
The references to depression in plaintiff's medical history were scant and the medically
determinable mental impairment created only mild limitations. (*Id.*). The ALJ's decision that any
such mental impairment due to depression was non-severe is supported by substantial evidence.
(*Id.*).

### E. Calculation of Plaintiff's RFC

Plaintiff further contends that the ALJ failed to consider plaintiff's other symptoms in the
calculation of his RFC. The ALJ is required to determine residual function capacity by
considering all relevant medical and other evidence to determine the claimant's ability to meet
certain mental, physical, sensory, and other job demands. 20 C.F.R. § 404.1545(a)(4); 20 C.F.R.
§ 416.945(a)(4). This includes medically determinable impairments that are not "severe." *Id*.
However, the ALJ's decision notes that he considered "all symptoms and the extent to which
these symptoms can reasonably be accepted as consistent with the objective medical evidence and
other evidence." (AR at 63). Therefore, the ALJ did consider plaintiff's other symptoms and his
calculation of plaintiff's RFC is supported by substantial evidence.

### F. Credibility of Plaintiff's Regarding Pain

Finally, plaintiff contends that the ALJ erred in not finding his testimony regarding his pain
credible. The ALJ found that "claimant's statements about the intensity, persistence, and limiting
effects are not credible to the extent they are inconsistent with or unsupported by objective
medical evidence." (*Id.* at 64).

Where there is "a substantial disparity between the claimant's complaints and the objective
medical findings contained in the record," it is the ALJ's responsibility "to determine issues of

credibility." *See Irlanda Ortiz*, 955 F.2d at 769 (noting that "the resolution of conflicts in the evidence is for the secretary, not the Courts"). As a general matter, "[t]he credibility determination by the ALJ, who observed the claimant, evaluated h[is] demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference. . . ." *Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987) (citing *DaRose v. Sec'y of Health & Human Servs.*, 803 F. 2d 24, 26 (1st Cir. 1986)). However, the ALJ "must make specific findings as to the relevant evidence he considered in determining to disbelieve" the plaintiff. *Da Rosa v. Sec'y of Health and Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986).

An ALJ assessing a plaintiff's subjective complaints of pain should consider (1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) precipitating and aggravating factors; (3) type, dosage, effectiveness, and adverse side effects of any pain medication; (4) treatment, other than medication, for relief of pain; (5) functional restrictions; and (6) plaintiff's daily activities. *Avery v. Sec'y of Health and Human Servs.*, 797 F.2d 19, 29 (1st Cir. 1986); *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). An ALJ is not required to discuss specifically all these factors in making a decision. *Deforge v. Astrue*, 09-cv-30173-MAP, 2010 WL 3522464, at *9 (D. Mass. Sept. 9, 2010).

The ALJ properly considered all the *Avery* factors at the hearing and in his decision. The ALJ questioned plaintiff regarding the nature, location, and severity of his pain at the hearing. In his decision, the ALJ noted the discrepancy between plaintiff's claims of pains and the treatments prescribed by his physicians, which were sometimes no more than taking ibuprofen, walking, and stretching. (AR at 64). Plaintiff stated that he regularly experienced pain that rated ten out of ten, which only went down to eight with medication. (*Id.* at 28-29). His course of treatment and

11

his daily activities, however, suggest otherwise. Furthermore, medical records did not establish any persistent adverse side effects to medication. (*Id.* at 64). Plaintiff also testified to engaging in a range of daily activities, which included watching TV and taking walks. (*Id.*). He also listed any problems he encountered, such as bending over to tie his shoes. (*Id.* at 36). The ALJ adequately explored all the *Avery* factors and plaintiff is not entitled to remand on this basis.

## III. Conclusion

For the foregoing reasons, plaintiff's motion to reverse the decision of the Commissioner is DENIED, and the Commissioner's motion to affirm is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: September 26, 2011